DAVID E. MASTAGNI, Esq. (SBN 204244)
davidm@mastagni.com
TAYLOR DAVIES-MAHAFFEY, Esq. (SBN 327673)
tdavies-mahaffey@mastagni.com
**MASTAGNI HOLSTEDT**
A Professional Corporation
1912 "I" Street
Sacramento, California 95811
Telephone:   (916) 446-4692
Facsimile:    (916) 447-4614

Attorneys for Plaintiffs

CYNTHIA M. GERMANO, Bar No. 151360
cynthia.germano@bbklaw.com
ROGER K. CRAWFORD, Bar No. 167426
roger.crawford@bbklaw.com
**BEST BEST & KRIEGER LLP**
3390 University Avenue, 5th Floor
P.O. Box 1028
Riverside, California 92502
Telephone:   (951) 686-1450
Facsimile:    (951) 686-3083

Attorneys for Defendant

## IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

RICHARD ARAGON, et al., on behalf of themselves and all similarly situated individuals,

                Plaintiffs,

    v.

CITY OF COLTON,

                Defendant.

Case No. 5:20-CV-00776-JGB-SP

**JOINT MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT AND DISMISSAL OF CASE**

Hearing Date:   December 6, 2021
Time:              9:00 a.m.
Location:         Riverside, Courtroom 1

# **TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................5

II. STATEMENT OF RELEVANT FACTS .............................................5

  A.  Background and Procedural Posture ...............................................5

  B.  Relevant Terms of the Settlement Agreement ..............................8

III. LEGAL STANDARD ......................................................................10

IV. ARGUMENT ...................................................................................12

  A.  Bona Fide Dispute ........................................................................12

  B.  The Proposed Settlement is a Fair and Reasonable Resolution of Plaintiffs'
     Claims. ...........................................................................................15

    1.    Plaintiffs' Range of Possible Recovery ...................................16

    2.    The Stage of the Proceedings and the Amount of Discovery Conducted19

    3.    The Seriousness of the Litigation Risks Faced by the Parties .................20

    4.    The Scope of Any Release Provision in the Settlement Agreement........23

    5.    The Experience and Views of Counsel .....................................24

    6.    The Possibility of Fraud or Collusion .......................................25

  C.  The Proposed Settlement Distribution Is Fair And Reasonable....................25

  D.  The Attorneys' Fees and Costs Provided by The Proposed Settlement
     Agreement Are Reasonable...........................................................26

VI. CONCLUSION.................................................................................27

# TABLE OF AUTHORITIES

**Cases**

*Alexander v. U.S.* 32 F.3d 1571 (Fed. Cir. 1994) ....................................22

*Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680 (1946)..........................17

*Barrentine v. Ark.–Best Freight Sys., Inc*., 450 U.S. 728 (1981) ...........................10

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245 (N.D. Cal. 2015)...............20

*Bothell v. Phase Metrics, Inc.,* 299 F.3d 1120 (9th Cir.2002).................................15

*Brittmon v. Upreach, LLC* 285 F.Supp.3d 1033 (S.D. Ohio 2018)........................25

*Callahan v. City of Sanger*, No. 14–cv–600–BAM, 2015 WL 2455419 (E.D. Cal. May 22, 2015)..............................................................................................15

*DeKeyser v. Thyssenkrupp Waupaca, Inc*. 747 F.Supp.2d 1043 (E.D. Wis. 2010) 22

*Dunn v. Teachers Ins. & Annuity Ass'n of Am*., No. 13-23 CV-05456-HSG, 2016 WL 153266 (N.D. Cal. Jan. 13, 2016) ...................................................... 10, 11

*Flores v. City of San Gabriel,* 824 F.3d 890 (9th Cir. 2016)........................... passim

*Haro v. City of Los Angeles* 745 F.3d 1249, 1260 (9th Cir. 2014).........................17

*In re Bluetooth Headset Products Liability*, 654 F. 3d 935 (9th Cir. 2011)...........26

*In re Online DVD-Rental Antitrust Litig*., 779 F.3d 934 (9th Cir. 2015)...............27

*Jones v. Agilysys, Inc.,* No. C 12-03516 SBA, 2014 WL 108420 (N.D. Cal. Jan. 10, 2014)........................................................................................................10

*Khanna v. Inter-Con Sec. Sys., Inc*., No. CIV S-09-2214 KJM, 2013 WL 1193485 (E.D. Cal. Mar. 22,2013)....................................................................................11

*Larsen v. Trader Joe's Co.*, 2014 WL 3404531 (N.D. Cal. Jul. 11, 2014) .............24

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998).........................19

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982)............11

*McKeen-Chaplin v. Franklin Am. Mortg. Co*., No. C 10-5243 SBA, 2012 WL 6629608 (N.D. Cal. Dec. 19, 2012)...................................................................12

*McLaughlin v. Richland Shoe Co*., 486 U.S. 128 (1988) .......................................15

*Moreno v. Regions Bank*, 729 F.Supp.2d 1346 (M.D. Fla. 2010) ...........................24

*Nen Thio v. Genji, LLC*, 14 F.Supp.3d 1324 (N.D. Cal. 2014) ...............................12

*Ontiveros v. Zamora*, 303 F.R.D. 356 (E.D. Cal. 2014)..........................................19

*Seguin v. County of Tulare*, No. 1:16-CV-01262DADSAB, 2018 WL 1919823 (E.D. Cal., Apr. 24, 2018) ................................................................................8

*Selk v. Pioneers Memorial Healthcare District*, 159F.Supp.3d 1164 (S.D. Cal. 2016).................................................................................................... passim

*Senne v. Kansas City Royals Baseball* Corp., 934 F.3d 918 (9th Cir. 2019) ..........17

*Slezak v. City of Palo Alto*, No. 16-cv-03224-LHK, 2017 WL 2688224 (N.D. Cal. June 22, 2017).................................................................................... 16, 23

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002)........................... 26, 27

*Yue Zhou v. Wang's Restaurant*, No. 05–cv–0279 PVT, 2007 WL 2298046 (N.D. Cal. Aug. 8, 2007) .........................................................................................10

**Statutes**

29 C.F.R. § 778.110(b) .......................................................................... 13, 14, 21

29 C.F.R. § 778.113 ........................................................................................ passim

29 C.F.R. § 778.113(a)..........................................................................................14

29 C.F.R. § 778.113(b) ..........................................................................................13

29 C.F.R. § 778.215(a)(5).......................................................................................13

29 C.F.R. § 778.218 ...............................................................................................22

29 C.F.R. §§ 778.109-110.........................................................................................8

29 U.S.C. § 207 .....................................................................................................14

29 U.S.C. § 207 (h)(2)..................................................................................... passim

29 U.S.C. § 207(e)(5-7) ..........................................................................................22

29 U.S.C. § 207(h) .................................................................................................22

29 U.S.C. § 255(a) .................................................................................................15

29 U.S.C. §§ 201, *et seq.*..........................................................................................5

# I.

# INTRODUCTION

In June 2016, the Ninth Circuit held that cash payments made to employees who waive an employer's health insurance coverage ("cash-in-lieu") and cafeteria plan contributions must be included in overtime pay rates, unless the cafeteria benefits plan is a "bona fide plan" under the provisions of the FLSA. (*Flores v. City of San Gabriel*, 824 F.3d 890 (9th Cir. 2016).)  As pled in their complaint, Plaintiffs contend the overtime rate (i.e., "regular rate of pay") Defendant paid to each Plaintiff was miscalculated, resulting in underpayment of overtime.  (Dkt. No. 1.)

Plaintiffs RICHARD ARAGON, et al. ("Plaintiffs") and Defendant CITY OF COLTON ("Defendant") (collectively "Parties"), respectfully move this Court to approve their conditional Settlement Agreement and dismiss this case with prejudice. As discussed more fully below, the Parties' Settlement Agreement resolves a bona fide dispute between the Parties, provides for fair and reasonable compensation to each plaintiff based on the allegations set forth in the complaint and information discovered during discovery, and is fair and reasonable in terms of the attorney's fees and costs sought by Plaintiffs' counsel in connection with pursuing this litigation.  The Settlement Agreement is submitted to this Court as Exhibit A.

# II.

# STATEMENT OF RELEVANT FACTS

## A.    Background and Procedural Posture

Plaintiffs filed their Complaint on April 14, 2020, pursuant to the provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. sections 201, *et seq*., to recover unpaid overtime compensation, liquidated damages in an equal amount, and attorney fees and costs based on Defendant's alleged failure to include all statutorily required forms of compensation in the calculation of the "regular rate" of pay.  (Dkt. No. 1.)  Specifically, Plaintiffs alleged Defendant excluded cash paid to employees

in lieu of health benefits ("CIL compensation") from the "regular rate," thereby resulting in the systematic underpayment of overtime compensation and cash out of compensatory time off ("CTO"). (*Id.*)  In addition, Plaintiffs also alleged Defendant unlawfully excluded contributions it made on behalf of employees towards the purchase of healthcare benefits because aggregate CIL compensation was more than "incidental," rendering its health benefits plan not "bona fide".  Defendant timely answered the complaint denying the allegations and asserted several affirmative defenses. (Dkt. 13.)

The Complaint was pled as a collective action on behalf of all similarly situated individuals who are, or were, employed by the Defendant over the last three years and also deprived of their complete statutory overtime. (Dkt. No. 1.) Commencing with the pay period of September 21, 2019, the City modified its calculation of the overtime rate of pay for both FLSA and contract overtime to include amounts paid as cash-in-lieu of health benefits, cafeteria plan contributions, and additional incentive pays. (Declaration of Roger Crawford ("Crawford Decl."), ¶ 10.)  The City also began paying CTO at the Regular Rate of Pay. (Crawford Decl., ¶ 10.)

The Complaint was originally filed by employees of the City of Colton Fire Department. Later, members of the International Brotherhood of Electrical Workers ("IBEW") Local 47 who were employed by the Defendant also opted in as Plaintiffs. The IBEW Plaintiffs are members of two different divisions or bargaining units represented by Local 47—the Electric Unit and the Water and Wastewater Unit—and thus are governed by two different memorandums of understanding ("MOUs'). Under the Electric Unit MOU, Plaintiffs receive twice their regular rate of pay ("double-time") for all overtime hours worked.

On March 24, 2020, the Parties entered into a tolling agreement effective February 25, 2020. (Mastagni Decl., ¶ 18; Crawford Decl., ¶ 7.) Pursuant to the Parties' Joint Stipulation and Protective Order, approved by Magistrate Judge Sheri

Pym on July 29, 2020, the Parties engaged in extensive informal discovery. (Dkt. 17.) Defendant provided extensive overtime and payroll records for Plaintiffs detailing the overtime hours worked, compensation paid, and calculation of damages based upon the backpay formula agreed upon in the Settlement. (Mastagni Decl., ¶ 19. Crawford Decl., ¶ 8.) Plaintiffs' counsel also reviewed the applicable labor agreements pertaining to Plaintiffs' compensation relevant to their claims. (Mastagni Decl., ¶ 20.)

Once Plaintiffs' counsel completed its review of the records, they identified multiple legal issues that could affect Defendant's liability, including whether the CIL compensation was "incidental" to its health benefit plans, the regulation which governed the proper calculation of the regular rate, whether Defendant acted in good faith, whether the violations were willful, the maximum recovery period, and the availability of offsets and credits under 29 U.S.C. section 207 (h)(2). (Mastagni Decl., ¶ 21.) They estimated liability based on possible outcomes of anticipated legal disputes. (*Ibid.*) For example, Plaintiffs anticipated that Defendant would seek credits pursuant to 29 U.S.C. section 207 (h)(2) for contract overtime paid in excess of the FLSA, e.g., hours that were paid by Defendant at an overtime rate pursuant to the MOU as opposed to FLSA thresholds. (Dkt. 13, 12:25-27.) Further, Plaintiffs' counsel anticipated that Defendant would dispute whether it acted in good faith entitling Plaintiffs to liquidated damages. (Dkt. 13, 12:6-9.) Plaintiffs' counsel anticipated Defendant would dispute whether any violation it committed was willful for purposes of the statute of limitations. (Dkt. 13, 12:13-16.) Finally, Plaintiffs' counsel also anticipated the Parties would disagree over the proper methodology used to calculate overtime owed under the FLSA.

In recognition of the high costs of litigation and in an effort to secure harmonious labor relations, the Parties have been engaged in ongoing arms-length negotiations regarding settlement and resolution of these matters even prior to the commencement of this suit. (Mastagni Decl., ¶ 22; Crawford Decl., ¶ 10.) As part

of these efforts, the Parties reviewed and exchanged significant amounts of relevant payroll and timekeeping data and presented each other with relevant legal authority in support of their respective positions before finally compromising on their respective positions. (Mastagni Decl., ¶ 23; Crawford Decl., ¶ 11.)  The Parties agreed upon a formula for determining each Plaintiff's individual damages based upon their claimed Regular Rate under-calculations and amounts of overtime hours worked. Once the damages formula had been agreed upon, the Parties painstakingly calculated back pay amounts, checked and double-checked their efforts, and finally reached agreement on all aspects of the settlement. (Mastagni Decl., ¶ 24; Crawford Decl., ¶ 11.) The Parties accord was memorialized into a long-form settlement agreement.  (Settlement Agreement, attached hereto as Exhibit A.)

**B.    Relevant Terms of the Settlement Agreement**

As a result of the efforts summarized above, the Parties have agreed to settle this matter for a total sum of $1,112,633.09.  This settlement amount includes all amounts to be paid by Defendant to Plaintiffs, attorneys' fees and costs inclusive, to resolve this matter. The Plaintiffs' total recovery will be $840,358.10. Key details of the settlement terms are as follows:

• Defendant will pay $840,358.10 to joined Plaintiffs for the period from September 22, 2016 through September 21, 2019, which exceeds the maximum three-year recovery period from the commencement on April 14, 2020 and the effective date of the tolling agreement on February 25, 2020;

• Damages are calculated based on the method set forth by the Department of Labor (DOL) at 29 C.F.R. section 778.113, rather than 29 C.F.R. sections 778.109-110, which would otherwise result in over a 66% reduction in damages (*Seguin v. County of Tulare*, No. 1:16-CV-01262DADSAB, 2018 WL 1919823, at *3(E.D. Cal., Apr. 24, 2018));

• Defendant agrees to forgo all offsets and credits that could be applied pursuant to 29 U.S.C. section 207 (h)(2);

---

• Defendant will pay back overtime pay using the more generous definition of overtime hours set forth in Plaintiffs' MOUs, excluding contractual overtime paid above the corrected Regular Rate of Pay (certain overtime hours are compensated at or near double-time), as opposed to what is required under the FLSA;

• Defendant began prospectively paying both FLSA and all contractual overtime based on the corrected Regular Rate of Pay which includes CIL, cafeteria plan contributions, and additional incentive pays;

• Due to the fact that Defendant's liability regarding IBEW Local 47 Electric Unit Plaintiffs was severely limited by the MOU granting overtime at a higher rate than the FLSA requires, the Parties agreed that Electric Unit Plaintiffs would receive a nominal amount of $500 each. Additionally, Defendant agreed moving forward to pay the double-time overtime based on the corrected Regular Rate of Pay which includes CIL, cafeteria plan contributions, and additional incentive pays;

• In exchange for Defendant's agreement to pay damages based on a methodology that significantly exceeds its maximum liability at trial, Plaintiffs have agreed to forgo liquidated damages and must each provide Defendant with an executed release of claims arising out of the Complaint, or directly related thereto;

• Of the total settlement amount, $272,274.99 is allocated to Plaintiffs' counsel for attorneys' fees and costs, which represents slightly less than 25% of the total settlement amount.

After finalizing the settlement agreement, the parties discovered a clerical error in the damage calculations for Plaintiff Michael Loya, which resulted in an under-calculation of Mr. Loya's damages. (Mastagni Decl., ¶ 25.) The parties corrected the error and agreed to increase the damages to be paid to Mr. Loya from $16,087.00 to $21,900.06 and increased the total settlement amount to $1,112,633.09 and the Plaintiff's total recovery to $840,358.10. (First Amendment

to Settlement Agreement, attached hereto as Exhibit B.)

On or about October 14, 2021, the parties executed a Second Amendment to the Settlement Agreement slightly modifying certain terms under the Time for Performance. (Second Amendment to Settlement Agreement, attached hereto as Exhibit C.)  The amendment provides that the parties will file a joint motion for approval rather than a stipulation.  The amendment also provides that Plaintiffs will receive payment of their back pay under the terms of Settlement Agreement no later than forty-five (45) calendar days after the Court files its order approving settlement or the City receives the Plaintiff's signed release if it has not been submitted prior to the Court's order.

Prior to executing the above-referenced release, each individual Plaintiff had a full and fair opportunity to consult with Plaintiffs' counsel regarding the terms of the proposed settlement. (Mastagni Decl., ¶ 27.)  To date, 75 of 76 individual Plaintiffs have returned an executed a separate "Settlement Agreement and Release of Claims" document. (Plaintiffs' Release of Claims, attached hereto as Exhibit D.)

### III.

### LEGAL STANDARD

Settlement of collective action claims under the FLSA requires court approval. (See *Jones v. Agilysys, Inc.,* No. C 12-03516 SBA, 2014 WL 108420, at *2 (N.D. Cal. Jan. 10, 2014).) Because an employee cannot waive claims under the FLSA, they may not be settled without supervision of either the Secretary of Labor or a district court. (See *Barrentine v. Ark.–Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981); *Yue Zhou v. Wang's Restaurant*, No. 05–cv–0279 PVT, 2007 WL 2298046, at *1 n.1 (N.D. Cal. Aug. 8, 2007).)

The Ninth Circuit has not established criteria for district courts to consider in determining whether a FLSA settlement should be approved. (*Dunn v. Teachers Ins. & Annuity Ass'n of Am.*, No. 13-23 CV-05456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016).) However, in this circuit, district courts have normally

applied a widely-used standard adopted by the Eleventh Circuit, looking to whether the settlement is a fair and reasonable resolution of a bona fide dispute. (*Id.*; see also *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982); *Selk v. Pioneers Memorial Healthcare District*, 159F.Supp.3d 1164, 1172 (S.D. Cal. 2016).) "A bona fide dispute exists when there are legitimate questions about the existence and extent of Defendant's FLSA liability." (*Selk*, 159F.Supp.3d at 1172 (internal quotation marks and citation omitted).) A court will not approve a settlement of an action in which there is certainty that the FLSA entitles plaintiffs to the compensation they seek, because it would shield employers from the full cost of complying with the statute. (*Id.*)

Once it is established that there is a bona fide dispute, courts often apply the Rule 23 factors for assessing proposed class action settlements when evaluating the fairness of an FLSA settlement (*Khanna v. Inter-Con Sec. Sys., Inc.*, No. CIV S-09-2214 KJM, 2013 WL 1193485, at *2 (E.D. Cal. Mar. 22,2013); *Seguin v. County. of Tulare*, No. 1:16-cv-01262-DAD-SAB, 2018 WL 1919823, at *2 (E.D. Cal. Apr. 24, 2018).)

District courts in this circuit recognize that some of the Rule 23 factors do not apply because of the inherent differences between class actions and FLSA actions. (*Id.*) Accordingly, in determining whether the settlement is fair and reasonable, courts will consider the totality of the circumstances within the context of the FLSA. (*Seguin*, 2018 WL 1919823 at *3.)   Courts often consider the following factors when evaluating settlements under FLSA: (1) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion. (*Selk*, 159 F. Supp. 3d at 1173.)

///

1    With this approach, a "district court must ultimately be satisfied that the

2    settlement's overall effect is to vindicate, rather than frustrate, the purposes of the

3    FLSA." (*Id*.) Settlements that reflect a fair and reasonable compromise of issues

4    that are actually in dispute may be approved to promote the efficiency of

5    encouraging settlement of litigation. (*McKeen-Chaplin v. Franklin Am. Mortg. Co*.,

6    No. C 10-5243 SBA, 2012 WL 6629608, at *2 (N.D. Cal. Dec. 19, 2012).)

## IV.

## ARGUMENT

### A.    Bona Fide Dispute

10    The Court should approve the proposed Settlement Agreement because it

11    resolves several bona fide disputes between the Parties regarding legitimate, legally

12    unresolved questions over the existence and extent of Defendant's liability.  "If a

13    settlement in an employee FLSA suit does reflect a reasonable compromise over

14    issues, such as FLSA coverage or computation of back wages, that are actually in

15    dispute[,] . . . the district court [may] approve the settlement in order to promote the

16    policy of encouraging settlement of litigation."  (*Nen Thio v. Genji, LLC*, 14

17    F.Supp.3d 1324, 1333 (N.D. Cal. 2014); *Lynn's Food Stores*, 679 F.2d 1350, 1353

18    n.8 (11th Cir. 1982) (requiring "settlement of a bona fide dispute between the

19    Parties with respect to coverage or amount due under the [FLSA]").)  The purpose

20    of this analysis is to ensure that an employee does not waive claims for wages,

21    overtime compensation, or liquidated damages when no actual dispute exists

22    between the Parties.  (*Ibid.*)

23    While Defendant acknowledges that under *Flores v. City of San Gabriel,* 824

24    F.3d 890 (9th Cir. 2016) CIL compensation must be included in the "regular rate,"

25    it disputes the nature and extent of liability.  (Mastagni Decl., ¶ 44; Crawford Decl.,

26    ¶ 18.)

27    First, uncertainty exists over Defendant's obligation to include contributions

28    towards the purchase of health care premiums in the Regular Rate.  The Ninth

Circuit rejected the Department of Labor's 20% cap on cash payments for a flexible benefit plan to qualify as bona fide under 29 C.F.R. section 778.215(a)(5), but declined to identify a new ceiling. (§ 778.215(a)(5); *Flores*, 824 F.3d at 903.) Nevertheless, Defendant has agreed to include the full flex benefit in the Regular Rate of Pay regardless of whether received as cash or premium contributions. (Mastagni Decl., ¶ 45; Crawford Decl., ¶ 20.)

Secondly, a bona fide dispute exists between the parties as to the proper method to calculate damages in this action.  The parties disagree over the methodology to be used in calculating the "regular rate" of pay. Plaintiffs contend that damages should be calculated using the method prescribed by 29 C.F.R. section 778.113, while Defendant contends that the correct method is set forth in 29 C.F.R. section 778.110(b).  This dispute stems from a disagreement as to whether damages should be calculated based on a method for salaried non-exempt employees, or instead based on a method for hourly non-exempt employees. (Mastagni Decl., ¶ 46; Crawford Decl., ¶ 21.)

Section 778.113 applies to salaried employees in general. For employees paid other than by workweek, subsection (b) provides:

> A monthly salary is subject to translation to its equivalent weekly wage by multiplying by 12 (the number of months) and dividing by 52 (the number of weeks). A semimonthly salary is translated into its equivalent weekly wage by multiplying by 24 and dividing by 52....The parties may provide that the regular rates shall be determined by dividing the monthly salary by the number of working days in the month and then by the number of hours of the normal or regular workday.

(29 C.F.R. § 778.113(b).)

///

Once a weekly rate is arrived at, the "regular hourly rate of pay, on which time and a half must be paid, is computed by dividing the salary by the number of hours which the salary is intended to compensate." (29 C.F.R. § 778.113(a).)

Under section 778.110(b) which applies to hourly rate employees, the bonus is added to the period for which the compensation applies and the total amount of compensation is divided by the number of hours worked to arrive at the hourly rate. (29 C.F.R. § 778.110(b).)  If Defendant is correct that damages should be calculated based on a method for hourly employees, damages would be reduced by over 66%. (*Seguin v. County. of Tulare*, No. 1:16-cv-01262-DAD-SAB, 2018 WL 1919823, at 3.)

Thirdly, the Parties dispute whether and to what extent Defendant is entitled to credits and offsets under 29 U.S.C. section 207. (Dkt 13, 12:25-27.) Defendant consistently asserted it could reduce any liability through the application of credits or offsets for compensating Plaintiffs with more generous overtime compensation than what the FLSA required.  According to the applicable labor agreements, Plaintiffs receive overtime premium pay for hours of work that do not qualify as overtime under the FLSA and in some cases at premium rates that exceed time and one-half of the correct Regular Rate of Pay.  (Mastagni Decl., ¶ 48.) Plaintiffs concede that Defendant would likely prevail in applying significant credits and offsets under 207(h)(2) should this case proceed to trial.  If the litigation were to continue and Defendant were held liable for violations of the FLSA, the calculation of the back wages would also be reduced by the exclusion of the non-FLSA overtime hours which were included in the damage calculations. Under the Settlement, the damages calculated for purposes of this settlement did not apply offsets and credits and included non-FLSA overtime hours.  (Mastagni Decl., ¶ 49; Crawford Decl., ¶ 17.)

Fourth, the parties dispute whether Defendant acted in good faith in its calculation of overtime compensation, or if Defendant would instead be subject to

liquidated damages. (See *Callahan v. City of Sanger*, No. 14–cv–600–BAM, 2015 WL 2455419, at *13–14 (E.D. Cal. May 22, 2015) (finding that the failure to include a health benefit reimbursement amount in calculating the regular rate of pay was done in good faith due to uncertainty in the law at the time).) Defendant maintained throughout this litigation that it has made continued efforts to achieve FLSA compliance.  Thus, Defendant's liability for liquidated damages is disputed.

Finally, the parties dispute the applicable statute of limitations. Under the FLSA, the statute of limitations is two years, which may be extended to three years if the violation is found to be willful. (29 U.S.C. § 255(a); *McLaughlin v. Richland Shoe Co*., 486 U.S. 128, 135 (1988).) The burden is on the employee(s) to show a willful violation.  The issue of willfulness involves a similar inquiry as good faith. "An employer's violation of the FLSA is "willful" when it is "on notice of its FLSA requirements, yet [takes] no affirmative action to assure compliance with them. [Citations omitted.]" (*Flores,* 824 F.3d at 906.)  A finding of good faith is plainly inconsistent with a finding of willfulness. (*Bothell v. Phase Metrics, Inc.,* 299 F.3d 1120, 1130 (9th Cir.2002).)  Here, the parties dispute whether the FLSA violation at issue in this case was willful. (Mastagni Decl., ¶ 51; Crawford Decl., ¶ 25.) All of these issues impact the extent of Defendant's FLSA liability in this case.

Based on the foregoing, it is respectfully submitted that the Settlement Agreement resolved several bona fide disputes between the Parties that all affected the extent of Defendant's liability. Notably, in consideration of Plaintiff's forgoing liquidated damages, all the disputed issues were resolved in Plaintiffs' favor with respect to the Plaintiffs' counsel's calculation of damages.

**B.    The Proposed Settlement is a Fair and Reasonable Resolution of Plaintiffs' Claims.**

To determine whether a FLSA settlement is fair and reasonable, courts evaluate the "totality of the circumstances" within the context of the purposes of the FLSA.  (*Slezak v. City of Palo Alto*, No. 16-cv-03224-LHK, 2017 WL 2688224, at

*3 (N.D. Cal. June 22, 2017).)  As indicated above, courts in the Ninth Circuit have considered the following factors when determining whether a settlement is fair and reasonable under the FLSA: (1) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion.  (See *Selk v. Pioneers Memorial Healthcare Dist.*, 159 F. Supp. 3d 1164, 1173 (S.D. Cal. Jan. 29, 2106); *Slezak*, 2017 WL 2688224, at *3.)

### 1.  Plaintiffs' Range of Possible Recovery

Under the terms of the Settlement Agreement, Defendant will pay a total sum of $1,112,633.09.  While *Flores* made it a near certainty that Plaintiffs would prevail in at least some respect at trial, multiple issues exist that could significantly reduce the ultimate recovery at trial. (Mastagni Decl., ¶ 51.)

In order to efficiently prosecute and settle this case, the parties prepared damages estimates based on Plaintiffs' payroll data which approximates a maximum range of recovery that significantly overstates the maximum damages available using the precise FLSA calculations.  Plaintiffs' labor contracts treated most paid time off as "hours worked" for purposes of determining overtime compensation.  In order to avoid the substantial expense of converting payroll records reflecting MOU-defined overtime to FLSA overtime calculations, the parties agreed to use the MOU-defined overtime hours in its calculations.  The use of MOU-defined overtime hours substantially increased Plaintiffs' damages calculations. No other credits or offsets otherwise available to Defendant pursuant to 29 U.S.C. section 207(h)(2) were applied in making these calculations. (Mastagni Decl., ¶ 40; Crawford Decl., ¶ 16.)

Plaintiffs used the approximate estimates of damages described below in part because the nature of Plaintiffs' compensation, particularly as to the majority of the

Plaintiffs employed as firefighters[1], renders precise FLSA calculations of backpay difficult, costly, and overly time consuming.  (See, *Senne v. Kansas City Royals Baseball* Corp., 934 F.3d 918, 939 (9th Cir. 2019) (approving use of damages estimates in FLSA litigation); citing, *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680 (1946).)

To determine each Plaintiff's damages, the City certified the amounts of monies paid for CIL, flex benefits, and additional incentive pays not included in the Regular Rate of Pay. That amount was annualized and divided by the number of regularly scheduled hours each employee worked in a given year, to arrive at the alleged hourly regular rate of pay shortage. If the employee was being paid on a salary basis, this hourly regular rate shortage amount was then multiplied by 1.5 and then multiplied by all overtime hours the employee worked or was deemed to work, including contract overtime hours in excess of FLSA-recognized overtime hours, pursuant to the terms of the applicable MOU with employee organizations, within a given year.[2]  If the employee  was expressly being paid on an hourly basis, the hourly regular rate shortage was then multiplied by .5 and then multiplied by all overtime hours the employee worked or was deemed to work, including contract overtime hours in excess of FLSA-recognized overtime hours, pursuant to the terms of the applicable MOU within a given year.  The hourly regular rate shortage amount was also added to an employee's regular rate of pay and multiplied by the number of CTO hours that were cashed out by an employee in a given year. No

---

[1] The calculation of FLSA overtime hours, FLSA damages, and FLSA credits is particularly difficult for firefighter Plaintiffs because their 207(k) work periods overlap the City pay periods.  Given that the amount of credits must be determined on a work period basis based upon the number of actual hours worked and creditable non-FLSA overtime, the calculation of precise FLSA overtime hours and credits would be extremely time consuming and costly.  (See generally, *Haro v. City of Los Angeles* 745 F.3d 1249, 1260 (9th Cir. 2014) (limiting the use of offsets and credits to within the work period in which they were paid).)  That calculation is particularly complex here, where firefighter Plaintiffs work a 24-day 7(k) work period, which does not coincide with the City's pay cycle.  For precise FLSA damages, work schedules and attendance records would have to be cross checked against the dates covered in each pay period.  (Mastangi Decl., ¶ 41.) The time and cost associated with preparing precise FLSA damages and offsets was avoided by applying the overly favorable assumptions to all Plaintiffs.
[2] This salary-based calculation was applied to the majority of Plaintiffs, including the named Fire Fighter Plaintiffs.

1  other credits or offsets otherwise available to Defendant pursuant to 29 U.S.C.

2  section 207(h)(2) were applied in making these calculations. (Mastagni Decl., ¶ 42;

3  Crawford Decl., ¶ 17.)

4        This method was applied over a time period that significantly exceeds the

5  maximum recovery period available at trial, even if Plaintiffs establish a willful

6  violation and successfully apply the tolling agreement to all joined plaintiffs. Under

7  the FLSA, the maximum amount a plaintiff can recover is twice the amount of

8  underpaid FLSA wages for the three-year period prior to opting into the lawsuit

9  (i.e., an award of liquidated damages coupled with a finding the violation was

10  willful).   Here, Plaintiffs who received cash-in-lieu are recovering damages

11  beginning from September 22, 2016, which exceeds the maximum statutory

12  recovery period for all Plaintiffs because it reaches back approximately three (3)

13  years and seven (7) months before the date the Complaint was filed, not their

14  respective opt-in dates. (See Dkt. No. 1.) Moreover, the Settlement exceeds the

15  maximum recovery period available under the effective date of the tolling

16  agreement, i.e. February 25, 2020, by reaching back approximately three (3) years

17  and five (5) months from its effective date. (Mastagni Decl., ¶ 52.)

18        The maximum calculation using every overly generous assumption described

19  above results in aggregate damages of approximately $1,112,633.09, exclusive of

20  liquidated damages.  This amount far exceeds the backpay damages that could be

21  established at trial because the number of FLSA qualifying overtime hours are much

22  lower than the contractual overtime hours, Defendant would be entitled to

23  substantial offsets and credits, and the recovery period would be shortened 5 to 7

24  months (even assuming willfulness was established).  Therefore, the Settlement

25  amounts are based on inflated backpay estimates far above what the FLSA requires,

26  and which approximate or exceed the maximum FLSA based recovery available at

27  trial, even with full liquidated damages.

28  ///

Further, the settlement affords the Plaintiffs prompt, substantial relief, while avoiding significant legal and factual hurdles that otherwise may have prevented the Plaintiffs from obtaining as prompt and favorable a recovery.  While Plaintiffs' counsel believes the collective claims are meritorious, they are experienced and realistic, and understand that the resolution of the foregoing and other key issues, the outcome of a trial, and the outcome of any appeals that may follow are inherently uncertain in terms of both outcome and duration.  Because the settlement amounts exceed the maximum recovery Plaintiffs' counsel has calculated that each Plaintiff could realistically expect at trial, this agreement should be approved.  Accordingly, the Plaintiffs are better served by settlement than the attendant risks of further litigation.

### 2. The Stage of the Proceedings and the Amount of Discovery Conducted

Courts assess the stage of the proceedings and the amount of discovery completed to ensure that parties have an adequate appreciation of the merits of the case before reaching a settlement.  (See *Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014) ("A settlement that occurs in an advanced stage of the proceedings indicates that the parties carefully investigated the claims before reaching a resolution.").)  As long as the parties have "sufficient information to make an informed decision about settlement," this factor will weigh in favor of approval. (*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).)  Here, the Parties have sufficient information to make an informed decision regarding settlement.  Specifically, the Parties engaged in informal discovery to obtain the necessary evidence (i.e., time and payroll records) to form an adequate appreciation of the merits of the case before reaching the proposed settlement.  (Mastagni Decl., ¶ 19; Crawford Decl., ¶ 8.)  Plaintiffs' counsel analyzed and checked the damages calculations, and the Parties even amended the Settlement Agreement to correct a clerical error in the data inputted for Plaintiff Loya.  (Mastagni Decl., ¶ 25.) This

factor also weighs in favor of settlement.

### 3.  The Seriousness of the Litigation Risks Faced by the Parties

Settlement is favored where "there is a significant risk that litigation might result in a lesser recover[y] for the class or no recovery at all." (*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 255 (N.D. Cal. 2015).)  As discussed in greater detail above, although liability is likely, there are a number of variables that could impact the calculation of damages in this case.

First, as a statutory matter, Plaintiffs will not be able to recover any damages for the 5 to 7 months of additional damages calculations included in the Settlement damages but which exceed the maximum three (3) year recovery period.  In fact, Plaintiffs may not recover at trial any damages based upon the Defendant's alleged willfulness, which would reduce the recovery period in the proposed settlement from an additional year to a maximum of two (2) years.  This could reduce the potential liability by over 40%.  (Mastagni Decl., ¶ 51.)

Second, if Defendant prevailed on the issue of good faith, the claimed damages would be reduced by an additional 50%. Should Plaintiffs not prevail on these issues, their recovery would be significantly diminished.  (Mastagni Decl., ¶ 50.)

Third, the Settlement assumes that the City's flex benefit plan was not bona fide and includes all health benefit contributions, whether paid as cash-in-lieu or used to pay health benefit premiums, in the Regular Rate damages calculations. Defendant acknowledges that the amount of cash-in-lieu paid to employees exceeded 20% in the three years preceding the filing of the lawsuit. (Crawford Decl., ¶ 19.) However, in *Flores*, the Court expressed skepticism about a 2003 Opinion Letter by the Department of Labor which stated that, if greater than 20% of a plan's benefits were paid in cash, the payments could not be considered incidental, the plan could not be considered "bona fide," and the employer's entire flexible benefits contribution would have to be included in the FLSA overtime rate.

(*Flores*, 829 F.3d at 903.) What the Court did not do in *Flores* was to establish an alternative test to the DOL's 20% rule, holding instead that the City of San Gabriel's flexible benefits plan was not bona fide since it was clearly beyond any interpretation of "incidental." (*Id*. at 903.) Although the amounts of cash-in-lieu paid by Defendant are similar to those in *Flores*, there is still ambiguity in the law regarding how to determine whether cash payments are incidental and thus risk that contributions towards premiums could ultimately be excluded should this settlement be rejected.

Fourth, the Parties disputed the method of how to calculate the FLSA liability. Plaintiffs asserted throughout this litigation that damages should be calculated based on the method for salaried, non-exempt employees prescribed in 29 C.F.R. section 778.113 for all Plaintiffs except those expressly identified as hourly employees in their respective labor agreements.  Section 778.113 uses the regularly scheduled hours as the divisor to determine the "regular rate" before making the time and one-half calculation.  However, Defendant consistently maintained that all Plaintiffs are only entitled to the calculation methodology set forth in 29 C.F.R. section 778.110(b), which uses all hours worked (including overtime hours) to calculate the "regular rate," and only applies the "regular rate" to the premium (i.e., 0.5) portion of the overtime hours.  As an example, 29 C.F.R. section 778.110(b) uses the incorporation of a flat sum bonus in the calculation of the "regular rate."  The application of one method over another has a significant effect on the amount of overtime owed.  As a practical matter, were the City to prevail on this issue, the salaried Plaintiffs' damages would be reduced by over 66%. (Mastagni Decl., ¶ 46; Crawford Decl., ¶ 21.)

Additionally, Defendant contends that at trial it would not be liable for damages based upon all non-FLSA qualifying contract overtime hours and would seek to exclude them from the calculation of any damages.  The FLSA's overtime calculations would produce much less generous results than the calculations.

Defendant would further assert offsets and/or credits at trial, which if permitted, would further reduce any recovery.

Under the FLSA, an employee's use of paid leave is not counted as "hours worked" for purposes of determining if the employee has worked FLSA overtime. (See 29 C.F.R. § 778.218 ("Payments which are made for occasional periods when the employee is not at work due to vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar cause, where the payments are in amounts approximately equivalent to the employee's normal earnings for a similar period of time, are not made as compensation for his hours of employment.").) Through the Defendant's practice of compensating employees at the overtime rate for hours worked outside their regularly scheduled shifts, the settlement payments do not take advantage of the ability to exclude paid leave from the calculation of hours worked. (Mastagni Decl., ¶ 40; Crawford Decl., ¶ 17.)

Under 29 U.S.C. section 207(h) and 29 U.S.C. section 207(e)(5-7), an employer may be entitled to "credits" or an "offset" against its FLSA liability if it has paid employees Contract Overtime before the employees worked FLSA overtime or at premium rates exceeding time and one-half of the Regular Rate. (See *DeKeyser v. Thyssenkrupp Waupaca, Inc.* 747 F.Supp.2d 1043, 1057 (E.D. Wis. 2010) (holding payments at time and one half for all hours worked on Saturdays and double time for all hours worked on Sundays made regardless of whether the employee has worked more than 40 hours during the workweek are subject to credits as premium pay under § 207(h)(2) against any unpaid overtime obligations under the FLSA.); *Alexander v. U.S.* 32 F.3d 1571, 1577 (Fed. Cir. 1994) (holding double-time payments constitutes "extra compensation provided by a premium rate" and falls within the statutory exceptions under 29 U.S.C. § 207(e)(5) and (6) and are thus creditable toward any overtime compensation due under the FLSA.).)

The firefighter Plaintiffs are eligible to and did earn "Emergency Overtime" which is paid at a premium rate that exceeded time and one half of the corrected

Regular Rate of Pay.  Similarly, Plaintiffs in the IBEW Local 47 Electric Division were paid all overtime at a so-called double-time rate that exceeded time and one half of the corrected Regular Rate of Pay (although the rate was less than double the corrected Regular Rate of Pay).  The Settlement payments do not take advantage of the potential ability to claim credits for Contract Overtime and afford all Plaintiffs minimum damage amounts of $500.00, even though Plaintiffs in the IBEW Local 47 Electric Division could potentially recover nothing. (Mastagni Decl., ¶ 40; Crawford Decl., ¶ 17.)

However, as described above, each Plaintiff's damages were calculated using a methodology that used contract overtime hours rather than FLSA overtime hours, applied a recovery period that significantly exceeds any recovery period Plaintiffs could hope to attain at trial, applies the most favorable calculation method under Section 778.113, except for a minority of Plaintiffs who are expressly recognized as hourly employees, and relinquishes Defendant's right to apply offsets and/or credits. (Mastagni Decl., ¶ 47.)  In exchange, under the Settlement Plaintiffs forgo liquidated damages, which would only be available on the backpay owed under the FLSA definitions of overtime, a maximum of a three-year recovery period and after offsets and credits had been applied.  The damages under this settlement likely exceed the maximum recovery Plaintiff could obtain at trial even if they prevailed on every disputed issue, including the entitlement to liquidated damages.

As a result, Plaintiffs face the significant risks and a high probability that their overall recovery will be significantly reduced if this action proceeds to trial. Accordingly, this factor also weighs in favor of approval of settlement.

### 4.  The Scope of Any Release Provision in the Settlement Agreement

"A FLSA release should not go beyond the specific FLSA claims at issue in the lawsuit itself." (*Slezak*, 2017 WL 2688224, at *5.)  Expansive release of claims would allow employers to unfairly extract valuable concessions from employees using wages that they are guaranteed by statute. (See *Moreno v. Regions Bank*, 729

F.Supp.2d 1346, 1351 (M.D. Fla. 2010) ("An employee who executes a broad release effectively gambles, exchanging unknown rights for a few hundred or a few thousand dollars to which he is otherwise unconditionally entitled.").)

Here, the release extends to all "any and all claims, charges, grievances, complaints, allegations, and causes of action for compensation, damages, injunctive relief, declaratory relief, costs, attorneys' fees or any other form of relief of any nature whatsoever, whether the existence, nature or extent of the released claim is known or unknown, suspected or unsuspected, which the releasing parties have or might have, or which the releasing parties at any time heretofore had or might have had, claimed to have or may claim to have against the released parties arising in, or in connection with, or out of the ACTION and FLSA Claims described above and any such claim related to, arising in, or in connection with, or out of the FLSA Claims described above, whether filed in state or federal court, or with a state, federal or local administrative agency ("RELEASED CLAIMS") through the date of execution of this AGREEMENT."

The Parties understand this release does not cover claims that do not relate to conduct or activity which does not arise from the Plaintiffs' FLSA claims raised in this action. The release extends to a waiver of claims under California Civil Code section 1542. However, this release is limited only to claims relating to or raised in the action. The Parties do understand that the waiver should and does cover any FLSA claims and issues related to the allegations in the Complaint, so that piecemeal litigation does not occur. This factor also favors settlement.

### 5. The Experience and Views of Counsel

In determining whether a settlement is fair and reasonable, "[t]he opinions of counsel should be given considerable weight both because of counsel's familiarity with th[e] litigation and previous experience with cases." (*Larsen v. Trader Joe's Co.*, 2014 WL 3404531, *5 (N.D. Cal. Jul. 11, 2014).) Here, Plaintiffs' counsel David Mastagni asserts that the terms of the Settlement Agreement are fair and

reasonable, and that the settlement amount is within the maximum range that Plaintiffs could expect to recover if this matter were to proceed to trial. (Mastagni Decl., ¶ 53.)  David Mastagni has years of experience litigating FLSA claims and has settled multiple FLSA claims and obtained court approval of those settlements, including in other cases asserting claims based on the *Flores* decision. (Mastagni Decl., ¶ 10.)  As such, his evaluation of the case is reliable.  Accordingly, this factor weighs in favor of approval of the settlement.

### 6.  The Possibility of Fraud or Collusion

Here, no fraud or collusion occurred in achieving this accord.  At all times, the Parties engaged in settlement negotiations at arms-length. (Mastagni Decl., ¶ 39; Crawford Decl., ¶ 26.)    Each Plaintiff's settlement amount which was determined by Plaintiffs' counsel was based on their maximum potential damages calculated using the payroll records provided by the Defendant plus an additional \$494.06.  (See *Selk,* 159 F.Supp.3d at 1179 (court concluded no fraud or collusion because opt-in plaintiff settlement amounts were determined by analysis of their payroll records).)  Accordingly, this factor also weighs in favor of approval.

## C.    The Proposed Settlement Distribution Is Fair And Reasonable

As described above, the proposed plan for distribution takes into account a variety of factors to ensure that the settlement allocation among the Plaintiffs is fair and accurate. To balance the goals of fairness and efficiency, the individual allocations by Plaintiffs' counsel were based on each Plaintiff's maximum potential damages.  These damages were calculated by the parties using all FLSA overtime hours worked and the amount of cash-in-lieu of health benefits received for the period beginning three years and seven (7) months prior to the filing of the action[3] through April 14, 2020.  The regular rate calculation used in the calculation of

---

[3] "Unlike Rule 23 class actions, the filing of an FLSA complaint does not toll the statute of limitations. Instead, the statute of limitations continues to run on each plaintiff's claim until the plaintiff files his or her consent to opt in to the action. 29 U.S.C. § 256." (*Brittmon v. Upreach, LLC* 285 F.Supp.3d 1033 (S.D. Ohio 2018).)

damages by Plaintiffs' counsel was that set forth in 29 C.F.R. section 778.113, unless an individual Plaintiff's labor agreement expressly identified them as hourly. No offsets or credits were applied pursuant to 29 U.S.C. section 207(h)(2). The individual damage amounts provided in this agreement approximate and likely exceed the maximum FLSA liability for each Plaintiff. (Mastagni Decl., ¶ 49.)

This allocation methodology more than fairly compensates each individual based on the number of overtime hours worked and the amount of excluded remuneration they received during the relevant time period. This method ensures each Plaintiff will receive damages that exceed the recovery they would likely receive at trial. (Mastagni Decl., ¶ 51.) Accordingly, this plan of distribution is fair, objective, and exceeds the approximate the relative damages suffered by each plaintiff.

## D.    The Attorneys' Fees and Costs Provided by The Proposed Settlement Agreement Are Reasonable

"Where a proposed settlement of FLSA claims includes the payment of attorney's fees, the court must also assess the reasonableness of the fee award." (*Selk*, 159 F.Supp.3d at 1180; *see also* 29 U.S.C. § 216(b) (providing that, in an FLSA action, the court shall "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action").) "Under Ninth Circuit law, the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method for awarding attorneys' fees." (*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).)

The Ninth Circuit has generally set a 25% benchmark for the award of attorneys' fees in common fund cases. (*Id.* at 1047-48; See also *In re Bluetooth Headset Products Liability*, 654 F. 3d 935, 942 (9th Cir. 2011) ("[C]ourts typically calculate 25 percent of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure.")) Reasons to vary the benchmark award may be found when

counsel achieves exceptional results for the class, undertakes "extremely risky" litigation, generates benefits for the class beyond simply the cash settlement fund, or handles the case on a contingency basis.  (*Vizcaino*, 290 F.3d at 1048-50; See also *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015).)  Ultimately, however, "[s]election of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." (*Vizcaino*, 90 F.3d at 1048.)

Pursuant to the Settlement Agreement, Plaintiffs' counsel will be paid $272,274.99 in attorneys' fees and costs, while the Plaintiffs will receive $ $834,545.04.  Thus, attorneys' fees represent slightly less than 25% of the total recovery.

# VI.

# CONCLUSION

Based on the foregoing, the Parties respectfully request this Court approve the proposed Settlement Agreement.

Respectfully submitted,

Dated: November 1, 2021        **MASTAGNI HOLSTEDT, APC**

By: */s/ David E. Mastagni*
DAVID E. MASTAGNI
TAYLOR DAVIES-MAHAFFEY
Attorneys for Plaintiffs

Dated: November 1, 2021        **BEST BEST & KRIEGER LLP**

By: */s/ Cynthia M. Germano*
ROGER K. CRAWFORD
CYNTHIA M. GERMANO
Attorneys for Defendant